SUMMARY MEMORANDUM OPINION; NOT INTENDED FOR PUBLICATION
IN THE OFFICIAL REPORTERS

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CONCESIONARIA DOMINICANA DE AUTOPISTAS Y CARRETERAS, S.A.**, <br><br> Petitioner, <br><br> v. <br><br> **THE DOMINICAN STATE**, <br><br> Respondent. | Civil Action No. 12-cv-1335 (RLW) |

## **MEMORANDUM OPINION**[1]

Petitioner Concesionaria Dominicana de Autopistas y Carreteras, S.A. ("CODACSA") brings this action to confirm an arbitral award against Respondent the Dominican State (the "Dominican Republic"), pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997, which was codified by Congress at Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201-08.  The matter is now before the Court on CODASCA's Motion for Default Judgment. (Dkt. No. 7).  For the reasons set forth herein, CODASCA's Motion will be **GRANTED**, and the

---

[1]   This unpublished memorandum opinion is intended solely to inform the parties and any reviewing court of the basis for the instant ruling, or, alternatively, to assist in any potential future analysis of the *res judicata*, law of the case, or preclusive effect of the ruling.  The Court has designated this opinion as "not intended for publication," but this Court cannot prevent or prohibit the publication of this opinion in the various and sundry electronic and legal databases (as it is a public document), and this Court cannot prevent or prohibit the citation of this opinion by counsel.  *Cf.* FED. R. APP. P. 32.1.  Nonetheless, as stated in the operational handbook adopted by our Court of Appeals, "counsel are reminded that the Court's decision to issue an unpublished disposition means that the Court sees no precedential value in that disposition."  D.C. Circuit Handbook of Practice and Internal Procedures 43 (2011).

Court will **CONFIRM** the underlying arbitral award issued in favor of CODASCA and against the Dominican Republic.

# BACKGROUND

On November 26, 2001, CODACSA entered into a concession contract with the Dominican Republic related to the funding and development of several stretches of highway extensions in the Dominican Republic. (Dkt. No. 1 ("Petition") at ¶ 6).[2] Roughly speaking, the contract granted CODACSA the right to collect tolls at three separate toll stations over the life of the concession (approximately thirty years), in exchange for various financing and construction obligations on the part of CODACSA. (*Id.*). Shortly after the contract was approved and enacted by the Dominican government, however, CODACSA asserts that the Dominican Republic breached and repudiated the contract by failing to deliver a contractually-required bank guarantee, among other ways. (*Id.* at ¶ 8). In turn, CODACSA initiated arbitration proceedings before the Arbitration Court of the International Chamber of Commerce ("ICC"), as called for by the terms of the concession contract. (*Id.*).[3]

---

[2] Because the Dominican Republic has not appeared in this action whatsoever, the facts set forth herein are drawn from CODASCA's Verified Petition to Confirm.

[3] More specifically, the applicable contract between CODACSA and the Dominican Republic expressly provided as follows:
   23. Settlement of Disputes.
   Any disputes or disagreements of any nature pertaining to or deriving from this contract, other than those that may be resolved by agreement shall be settled by arbitration in Arbitration Court of the International Chamber of Commerce in Paris, which shall administer the arbitration and designate the arbitrators in accordance with its Regulations and Bylaws.
   The parties also expressly agree to comply with the arbitration award handed down.
(Petition at ¶ 7; Dkt. No. 1-2 at ¶ 23).

2

Following the appointment and confirmation of three arbitrators, the ICC held evidentiary hearings in the matter on September 6-10, 2010, and October 25-26, 2010, in Washington D.C. (*Id.* at ¶ 12). The arbitrators ultimately issued their written award on January 11, 2012, finding that the Dominican Republic breached the contract in several respects and awarding CODACSA damages in the amount of $33,683,759.67, along with administrative expenses, attorneys' fees, and pre- and post-award interest. (*Id.* at ¶ 14; Dkt. No. 1-4 at Sect. XIII). Several months later, on May 25, 2012, the ICC arbitrators issued an "Addendum to the Final Arbitration Award," setting forth revised damages calculations for the award in favor of CODACSA. (Petition at ¶ 16; Dkt. No. 1-7 at Annex A, ¶ 914). More specifically, CODACSA was awarded damages as follows: (1) $37,438,424.56 for losses arising from the termination of the contract; (2) pre-award interest at the rate of LIBOR plus 2% per annum, amounting to a total of $3,016,480.42;[4] (3) $200,000.00 for administrative expenses of the ICC, including the fees and expenses of the arbitrators; and (4) $1,892,672.86 in attorneys' fees. (*Id.*). In sum, the total amount due at the time of the final award was $42,547,577.84. (*Id.*). The final award also provided for post-award interest at the rate of LIBOR plus 2% per annum, if the award was not paid within sixty days from the date of notification.[5] (*Id.*).

---

[4] The arbitrators' award provided for pre-award interest at the rate of 2% above the LIBOR six-month average as of the date of the award—May 31, 2012. CODACSA correctly identifies that rate as 2.7364%. *See* BBA LIBOR, Historical Libor Rates, May 2012, *available at* http://www.bbalibor.com/rates/historical (last visited Dec. 20, 2012). Applied to the overall principal amount of $37,438,424.56, the applicable daily interest rate is $2,845.74. (Petition at p. 7 n.2). In turn, CODACSA tabulates the total amount of pre-award interest—covering the period from June 30, 2009 through May 31, 2012—to be $3,016,480.42.

[5] CODACSA correctly identifies that applicable interest rate as of July 31, 2012, to be 2.7496%. *See* BBA LIBOR, Historical Libor Rates, July 2012, *available at* http://www.bbalibor.com/rates/historical (last visited Dec. 20, 2012). Applying that rate to the overall principal of $42,547,577.84, CODACSA calculates the applicable daily rate of interest to be $3,249.69. (Petition at p. 7 n.3).

On June 13 and 26, 2012, CODACSA requested that the Dominican Republic provide assurances that it would honor and pay the final award within the applicable sixty-day period. (Petition at ¶ 17). CODACSA also advised that, absent receipt of such assurances by July 10, 2012, CODACSA would initiate judicial proceedings to confirm the final award as a judgment. (*Id.*). While the Dominican Republic subsequently acknowledged the receipt of CODACSA's requests for assurances, it did not substantively respond to those requests. (*Id.*).

On August 13, 2012, CODACSA filed its Verified Petition to Confirm ("Petition") initiating these proceedings. As required by Article IV of the New York Convention, CODACSA attached to its Petition a certified copy of the final arbitral award, along with a certified copy of the parties' arbitration agreement (set forth at Paragraph 23 of the concession contract). On September 10, 2012, CODASCA served a copy of its Petition on the Dominican Republic through a courier, DHL World Wide Express. (Dkt. No. 5). The Dominican Republic received and accepted service of the Petition two days later, on September 12, 2012. (Dkt. No. 6). To date, however, the Dominican Republic has not responded to CODACSA's Petition, nor has it otherwise appeared in this action whatsoever. As a result, CODASCA filed this Motion for Default Judgment on November 19, 2012. (Dkt. No. 7). The Court initially issued a Minute Order advising that CODACSA's Motion was premature, insofar as no entry of default had been entered against the Dominican Republic. (*See* Minute Order dated Nov. 30, 2012). CODACSA then promptly moved for entry of default against the Dominican Republic, which the Clerk of Court entered on December 3, 2012. (Dkt. No. 13).[6] This Motion is now ripe for decision.

---

[6] The Court also notes that, although not required to do so given the Dominican Republic's default status, CODACSA served a copy of its Return of Service Affidavit and its Motion for Default Judgment on the Dominican Republic on November 30, 2012. (*See* Dkt. No. 11). Yet, the Dominican Republic still has not appeared in this action whatsoever.

## ANALYSIS

**A.  The Court Has Jurisdiction To Confirm The Arbitral Award**

To begin with, given the Dominican Republic's status as a foreign state, the Court must first consider the impact of the Foreign Sovereign Immunities Act ("FSIA") upon its power to hear this case.  *Creighton Ltd. v. Gov't of the State of Qatar*, 181 F.3d 118, 121-24 (D.C. Cir. 1999).  The FSIA renders a foreign state "presumptively immune from the jurisdiction of United States courts."  *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (citing *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 488-89 (1983)).  Therefore, "unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state."  *Id.*; *see also Peterson v. Royal Kingdom of Saudi Arabia*, 416 F.3d 83, 86 (D.C. Cir. 2005).  As relevant here, the FSIA specifically prescribes a jurisdictional exception for purposes of confirming certain arbitration awards:

> A foreign state shall not be immune from the jurisdiction of courts of the United States . . . in any case . . . in which the action is brought . . . to confirm an award made pursuant to . . . an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards.

28 U.S.C. § 1605(a)(6)(B).  This Circuit has explained that the "New York Convention is exactly the sort of treaty Congress intended to include in the arbitration exception."  *Creighton Ltd.*, 181 F.3d at 123-24 (quoting *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1018 (2d. Cir. 1993)) (internal quotations omitted).

Given that CODACSA properly invokes the New York Convention as the basis for its Petition, the FSIA's arbitration exception vests the Court with subject matter jurisdiction over this action.  An arbitral award "falls under the Convention" where it arises "out of a legal relationship, whether contractual or not, which is considered as commercial, including a

transaction, contract, or agreement . . . ." 9 U.S.C. § 202; *see also Global Distressed Alpha Fund I LP v. Red Sea Flour Mills Co. Ltd.*, 725 F. Supp. 2d 198, 203 (D.D.C. 2010). The arbitral award CODACSA seeks to confirm plainly falls under the Convention, inasmuch as it derives from CODACSA's commercial legal relationship with the Dominican Republic, as memorialized in the underlying concession contract. Accordingly, the FSIA's arbitration exception provides the Court with subject matter jurisdiction over this case.

Relatedly, the Court also concludes that it has personal jurisdiction over the Dominican Republic. The FSIA "specifies that personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have [subject-matter] jurisdiction . . . where service has been made under [28 U.S.C. § 1608]." *GSS Group Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 811 (D.C. Cir. 2012) (citing 28 U.S.C. § 1330(b)). More simply put, "under the FSIA, subject matter jurisdiction plus service of process equals personal jurisdiction." *Id.*; *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1548 n.11 (D.C. Cir. 1987). Therefore, because the Court has subject matter jurisdiction under § 1605(a)(6)(B), and because CODACSA properly effectuated service of process on the Dominican Republic pursuant to 28 U.S.C. § 1608(a)(3), (*See* Dkt. Nos. 3, 4, 5, and 6), the Court also has personal jurisdiction over the Dominican Republic.

### B. CODACSA Is Entitled To Confirmation of Its Arbitral Award

The New York Convention—which Congress ratified and adopted through Chapter 2 of the Federal Arbitration Act—authorizes the recipient of a foreign arbitral award to seek an order in federal court "confirming the award as against any party to the arbitration." 9 U.S.C. § 207. Upon receipt of such a petition, "[t]he court shall confirm the award unless it finds one of the

grounds for refusal or deferral of recognition or enforcement of the award specified in said Convention." *Id.* To be sure, "the FAA affords the district court little discretion in refusing or deferring enforcement of foreign arbitral awards: the Convention is 'clear' that a court 'may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention.'" *Belize Soc. Dev., Ltd. v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012) (quoting *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 935 (D.C. Cir. 2007)); *see also Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d. Cir. 2005) ("Given the strong public policy in favor of international arbitration, review of arbitral awards under the New York Convention is very limited in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.").

The Dominican Republic obviously does not argue that any of the exceptions under the New York Convention preclude confirmation of CODACSA's arbitration award—nor could it, given its default status in this case. Nonetheless, based upon an independent review of CODACSA's submissions,[7] the Court concludes that none of the grounds for refusing to confirm

---

[7] The FSIA only allows the entry of a default judgment against a foreign state "where the "the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). This standard is the same as that "applicable to default judgments against the U.S. Government under [Federal Rule of Civil Procedure] 55(e)," *Hill v. Republic of Iraq*, 328 F.3d 680, 683 (D.C. Cir. 2003), and the Court "may accept as true the plaintiff['s] uncontroverted evidence, including proof by affidavit." *Bell Helicopter Textron Inc. v. Islamic Repub. of Iran*, 764 F. Supp. 2d 122, 126 (D.D.C. 2011). Here, CODACSA presented the Court with certified copies of the original concession contract (Dkt. No. 1-2), along with the ICC's final arbitration award (Dkt. No. 1-4) and the subsequent addendum to that award (Dkt. No. 1-7)—all of which were introduced by way of CODACSA's verified petition, executed by Mr. Pedro Claros Alegría. Although the verification itself does not confirm Mr. Alegría's relationship to this action, upon a review of the ICC documents lodged along with CODACSA's Petition, Mr. Alegría appears to have been counsel of record for CODACSA in the arbitration proceedings before the ICC and therefore can properly authenticate the above-listed documents.

CODACSA's arbitral award exists here. *See G.E. Transp. S.p.A. v. Republic of Albania*, 693 F. Supp. 2d (D.D.C. 2010) (summarizing the Convention's grounds for refusing confirmation as: "incapacity of the parties; invalidity of the underlying agreement; an award beyond the scope of the arbitration agreement; improper composition of the arbitral panel; and an award that has not yet become binding, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made"). Therefore, given the Court's circumscribed role in reviewing CODACSA's Petition, the Court finds that CODACSA is entitled to confirmation of its arbitral award and a corresponding judgment against the Dominican Republic.

## **CONCLUSION**

For the foregoing reasons, CODASCA's Petition to Confirm the Award and for Default Judgment is GRANTED. An Order accompanies this Memorandum Opinion.

Date:  December 20, 2012

_____
ROBERT L. WILKINS
United States District Judge

---

(*See* Dkt. Nos. 1-4, 1-7). Accordingly, the Court concludes that CODACSA presented "satisfactory" evidence to justify the default judgment it seeks herein.